IN THE COURT OF APPEALS OF THE STATE OF IDAHO

Docket No. 39613

| | | |
|---|---|---|
| JAMES ZANE PARMER, | ) | 2013 Unpublished Opinion No. 585 |
| | ) | |
| Petitioner-Appellant, | ) | Filed: July 18, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| STATE OF IDAHO, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Respondent. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Timothy L. Hansen, District Judge.

Order summarily dismissing petition for post-conviction relief, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett LLP; Deborah A. Whipple, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

James Zane Parmer appeals from the district court's order summarily dismissing his petition for post-conviction relief. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts leading to Parmer's conviction for lewd and lascivious conduct are summarized in *State v. Parmer*, 147 Idaho 210, 207 P.3d 186 (Ct. App. 2009):

> Parmer provided massage services to K.R., a fourteen-year-old female, to treat her for migraine headaches and leg pain. K.R. reported that, at one session, Parmer was using a vibrating device to relieve tension in the muscles of her inner thigh when he placed the device in a position to cause her sexual arousal. Additionally, she reported that Parmer had also engaged in manual-genital contact.

*Id.* at 213, 207 P.3d at 189.

1

K.R. reported the incident to law enforcement authorities and an officer arranged for a confrontation call between K.R. and Parmer. During the call, Parmer told K.R. that he used the vibrating device because she had reacted negatively to other therapeutic techniques. Shortly thereafter, police officers interviewed Parmer and he explained that he used the device because he had arthritis and his hands were tired. After the interview, Parmer was arrested and charged with lewd conduct with a minor child under sixteen, Idaho Code § 18-1508.

Parmer's first trial resulted in a hung jury. Prior to the second trial, the district court granted the State's motion in limine to exclude Parmer's statements to police officers on the basis of hearsay. At trial, Parmer testified that he used the vibrating device to massage K.R. because his hands were tired and he suffered from arthritis. During closing statements, the prosecutor argued, "In addition, this whole business about his hands started at the trial, not when (sic) the day after it happened. Nowhere, you will hear, does he say anything on this tape, one bit, about saving his hands, and he had arthritis and was really suffering; nowhere." The jury found Parmer guilty of lewd conduct. The district court imposed a unified sentence of twenty years with seven years determinate.

Parmer appealed and this Court affirmed his conviction in *Parmer*, 147 Idaho 210, 207 P.3d 186. Thereafter, Parmer filed a petition for post-conviction relief, asserting twelve claims of ineffective assistance of counsel. The district court granted the State's motion for summary dismissal of the petition. Parmer timely appeals.

## II.

## ANALYSIS

Parmer claims that the district court erred in summarily dismissing his petition for post-conviction relief. A petition for post-conviction relief initiates a civil, rather than criminal, proceeding, governed by the Idaho Rules of Civil Procedure. *State v. Yakovac*, 145 Idaho 437, 443, 180 P.3d 476, 482 (2008). *See also Pizzuto v. State*, 146 Idaho 720, 724, 202 P.3d 642, 646 (2008). Like plaintiffs in other civil actions, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. I.C. § 19-4907; *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990); *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action, however, in that it must contain more than "a short and plain statement of the claim" that would suffice for a complaint under I.R.C.P. 8(a)(1). *State*

2

*v. Payne*, 146 Idaho 548, 560, 199 P.3d 123, 135 (2008); *Goodwin*, 138 Idaho at 271, 61 P.3d at 628. The petition must be verified with respect to facts within the personal knowledge of the petitioner, and affidavits, records, or other evidence supporting its allegations must be attached, or the petition must state why such supporting evidence is not included. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations, or it will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011); *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994).

Idaho Code § 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to motion of a party or upon the court's own initiative, if "it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of facts, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." I.C. § 19-4906(c). When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Payne*, 146 Idaho at 561, 199 P.3d at 136; *Roman*, 125 Idaho at 647, 873 P.2d at 901. Moreover, because the district court rather than a jury will be the trier of fact in the event of an evidentiary hearing, the district court is not constrained to draw inferences in the petitioner's favor, but is free to arrive at the most probable inferences to be drawn from the evidence. *Yakovac*, 145 Idaho at 444, 180 P.3d at 483; *Wolf*, 152 Idaho at 67, 266 P.3d at 1172; *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Chavez v. Barrus*, 146 Idaho 212, 218, 192 P.3d 1036, 1042 (2008); *Hayes*, 146 Idaho at 355, 195 P.2d at 714; *Farnsworth v. Dairymen's Creamery Ass'n*, 125 Idaho 866, 868, 876 P.2d 148, 150 (Ct. App. 1994).

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *McKay v. State*, 148 Idaho 567, 570, 225 P.3d 700, 703 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009); *Charboneau v. State*, 144 Idaho 900, 903, 174 P.3d 870, 873 (2007); *Berg v. State*, 131 Idaho 517, 518, 960 P.2d 738, 739 (1998); *Murphy v. State*,

3

143 Idaho 139, 145, 139 P.3d 741, 747 (Ct. App. 2006); *Cootz v. State*, 129 Idaho 360, 368, 924 P.2d 622, 630 (Ct. App. 1996).  Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor.  For this reason, summary dismissal of a post-conviction petition may be appropriate even when the State does not controvert the petitioner's evidence.  *See Payne*, 146 Idaho at 561, 199 P.3d at 136; *Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed.  *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Berg*, 131 Idaho at 519, 960 P.2d at 740; *Stuart*, 118 Idaho at 934, 801 P.2d at 1285; *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008); *Roman*, 125 Idaho at 647, 873 P.2d at 901.  If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues.  *Kelly*, 149 Idaho at 521, 236 P.3d at 1281; *Payne*, 146 Idaho at 561, 199 P.3d at 136; *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief.  *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Berg*, 131 Idaho at 519, 960 P.2d at 740; *Sheahan*, 146 Idaho at 104, 190 P.3d at 923; *Roman*, 125 Idaho at 647, 873 P.2d at 901.  Over questions of law, we exercise free review. *Rhoades v. State*, 148 Idaho 247, 250, 220 P.3d 1066, 1069 (2009); *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001); *Martinez v. State*, 130 Idaho 530, 532, 944 P.2d 127, 129 (Ct. App. 1997).

A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act.  *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009).  To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007).  To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho

4

433, 442, 163 P.3d 222, 231 (Ct. App. 2007). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231. This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011).

In the instant case, Parmer claims that his defense counsel provided ineffective assistance by: (1) failing to articulate a proper rule of evidence to admit into evidence his interview with police officers; and (2) failing to introduce evidence regarding the ilioinguinal nerve.

## A.     The Police Interview

Prior to trial, the State filed a motion in limine to exclude statements stemming from Parmer's interview with police officers because the statements were hearsay. Specifically, the police interview contained statements from Parmer that he used the vibrating device because his hands were tired. Defense counsel argued that the statements were admissible under I.R.E. 801(d)(2), admissions by a party-opponent.[1] The district court granted the motion in limine and excluded the evidence. At trial, Parmer testified on his own behalf. During Parmer's testimony, some of his answers approached the topic of the police interview. Each time this happened the prosecutor objected, citing to the motion in limine, and the district court sustained the objection. Nonetheless, Parmer was allowed to testify that he used the vibrating device because his hands were tired. On cross-examination, the prosecutor questioned Parmer about his tired hands:

---

[1]     Idaho Rule of Evidence 801(d)(2) states:

> Admission by party-opponent. The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity, or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by a party to make a statement concerning the subject, or (D) a statement by a party's agent or servant concerning a matter within the scope of the agency or employment of the servant or agent, made during the existence of the relationship, or (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

STATE: The reason you used the vibrator, according to your testimony, is that your hands were tired; is that correct?

PARMER: Yes.

STATE: You told [K.R.] on the phone you were just trying to get rid of the pain, and you didn't know how else to get rid of it?

PARMER: Exactly.

STATE: You never said anything about, "Geez, [K.R.], I'm sorry. My hands were so tired yesterday." You never said that, did you?

PARMER: No.

. . . .

STATE: The day after you use the vibrator on [K.R.], the day after, it hadn't even been 24 hours, you told her the only reason you used it was to get rid of her pain; is that correct?

PARMER: That was one thing I said. That is not the only reason.

STATE: That is the only thing you said, correct?

PARMER: No, we were just talking about the--

STATE: Mr. Parmer.

PARMER: Yes.

STATE: And you said it several times, didn't you?

PARMER: Some times. I don't know how many times.

STATE: Today, you're saying you used it because your hands were tired the previous day, correct?

PARMER: One of the reasons.

During closing statements, the prosecutor said, "In addition, this whole business about his hands started at the trial, not when (sic) the day after it happened. Nowhere, you will hear, does he say anything on this tape, one bit, about saving his hands, and he had arthritis and was really suffering; nowhere."[2]

On appeal, Parmer argues that defense counsel was ineffective for failing to articulate to the court that the police interview was admissible under I.R.E. 801(d)(1)(B), which provides:

---

[2]    Parmer argues that his statements to police officers should have been admissible to rebut the prosecutor's closing remarks, specifically his statements regarding his tired hands starting at trial. However, during the presentation of evidence at trial, the prosecutor never expressly accused Parmer of fabricating his story. As Parmer argues in his brief, the express accusation from the prosecutor indicating that Parmer fabricated his story "at the trial, not the day after it happened," was made in the closing statement. Therefore, there would have been no basis for defense counsel to seek to admit evidence of the police interview under I.R.E. 801(d)(1)(B) during the case-in-chief based upon the prosecutor's closing. Once the accusation of fabrication occurred during the closing statement, the proper action, if any, would have been to object to the prosecutor's statement.

6

(d) Statements which are not hearsay. A statement is not hearsay if--

   (1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with declarant's testimony and is offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive . . . .

"Prior consistent statements may be offered to show that the witness did not recently fabricate testimony. Such statements are not hearsay, because the statement is not being offered to prove the truth of the matter asserted in the declaration but to show the credibility of the witness." *State v. Howard*, 135 Idaho 727, 732, 24 P.3d 44, 49 (2001) (citation omitted).

As Parmer acknowledges, in interpreting the federal counterpart to this rule, Federal Rule of Evidence 801(d)(1)(B), the United States Supreme Court stated, "The Rule permits the introduction of a declarant's consistent out-of-court statements to rebut a charge of recent fabrication or improper influence or motive *only* when those statements were made *before* the charged recent fabrication or improper influence or motive." *Tome v. United States*, 513 U.S. 150, 167 (1995) (emphasis added).[3] Further, the Ninth Circuit has determined that the motive to fabricate may arise at the time the defendant knows an investigation is underway. *United States v. Bao*, 189 F.3d 860, 864-65 (9th Cir. 1999). Parmer's attempt to distinguish these cases is unpersuasive. More to the point, however, is the recent case of *State v. Joy*, ___ Idaho ___, ___, ___ P.3d ___, ___ (June 25, 2013) in which the Idaho Supreme Court stated that prior consistent statements may be admitted under Rule 801(d)(1)(B) "where the prior statements preceded the declarant's motive to lie."[4] Thus, Parmer's argument that trial counsel was ineffective for failing to object under Rule 801(d)(1)(B) fails because his statements to police officers occurred after the motive to fabricate arose. Prior to the statements being made, police officers had already searched Parmer's place of business and took him to the police station where they advised him of his *Miranda*[5] rights. Certainly, Parmer was aware at this time that a police investigation was

---

[3] The federal counterpart, Federal Rule of Evidence 801(d)(1)(B), is substantially the same as I.R.E. 801(d)(1)(B).

[4] *See also State v. Trevino*, 132 Idaho 888, 895, 980 P.2d 552, 559 (1999).

[5] *Miranda v Arizona*, 384 U.S. 436 (1966).

7

underway and clearly he had a motive to misrepresent the facts after that point. The district court did not err in summarily dismissing this claim.

## B.    The Ilioinguinal Nerve

Parmer claims that defense counsel was ineffective for failing to elicit testimony regarding the ilioinguinal nerve. According to Parmer, "The ilioinguinal nerve is a branch of the first lumbar nerve that is distributed to the muscles of the abdomen, to the skin of the proximal and medial part of the thigh, and to the . . . mons veneris and labia majora in women." Further, Parmer alleges that "stimulus in an area three inches or more from the labia could subjectively be mistaken for physical contact with the clitoris and the labia." Parmer contends that evidence regarding the nerve "would be key to establishing that [he] did not touch K.R.'s genital area."

The record demonstrates that evidence was not presented regarding the ilioinguinal nerve; however, substantially similar testimony was elicited. During Parmer's direct examination, the following testimony was given:

| | |
|---|---|
| DEFENSE COUNSEL: | What does vibration do? |
| PARMER: | It works as a desensitizer for pain. |
| DEFENSE COUNSEL: | Does it--when you put vibration on somebody, does it stay right at that area where you put that? |
| PARMER: | No. It disseminates. |
| DEFENSE COUNSEL: | What do you mean, disseminates? |
| PARMER: | It radiates. |
| DEFENSE COUNSEL: | On that, on State's Exhibit 3--do you have it up there? Pick it up. |
| . . . . | |
| DEFENSE COUNSEL: | Put it on high. In your mind, do you think that would radiate out? |
| PARMER: | Yes. |
| . . . . | |
| DEFENSE COUNSEL: | If you put that on someone, what would it do? |
| PARMER: | The sensation would distribute through the whole nerve pathway that it was in contact with. |
| DEFENSE COUNSEL: | If you put it on the inner thigh, near the crotch area, where do you think it would radiate? |
| PARMER: | Into the private parts. |

Based on this testimony, Parmer was able to explain that by placing the vibrating device on the thigh it could lead to a sensation into the private parts because the vibration would radiate through the nerve pathway. This is substantially the same evidence that Parmer alleges his defense attorney failed to elicit, although it lacks the scientific terminology. Further, Parmer has

failed to argue or demonstrate that the decision not to use the scientific terminology at trial was not a tactical decision.

Parmer claims that the focus of his trial was his credibility. He claims that without defense counsel's deficiencies, his testimony would have been credible and the jury would have acquitted him or there would have been another hung jury. The district court determined that Parmer failed to show a reasonable probability that, but for the failures of counsel, he would not have been convicted. Specifically, the district court held that even assuming a deficiency in counsel's performance, considering all of the evidence against Parmer, he had failed to show a probability sufficient to undermine confidence in the outcome such that, but for counsel's failings, the outcome of the trial would have been different. We agree. During trial, K.R. testified that Parmer placed the vibrating device on her clitoris and used his other hand to penetrate her vagina. The jury heard a recording of the confrontation call, in which Parmer admitted he "made a mistake" and "got too close" and lamented that the incident could "destroy" him. Eight other witnesses testified that Parmer inappropriately touched them during treatments, including four witnesses who claimed Parmer used his hand and/or his mouth to penetrate their vaginas. Moreover, the evidence that Parmer wanted admitted--his statements in the police interview and evidence of the ilioinguinal nerve--only relate to his use of the vibrating device and not to the allegation that he used his hand to penetrate K.R.'s vagina. Therefore, even with the desired evidence admitted, Parmer still had to convince the jury that he did not inappropriately touch K.R. with his hand. Thus, in order to establish prejudice, Parmer must show that the desired evidence would have caused the jury to find: (1) K.R.'s testimony regarding both the vibrating device and Parmer's hand not to be credible; (2) Parmer's testimony credible; (3) the confrontation call as only an admission that the vibrating device was placed too closely; and (4) that the eight witnesses' testimonies were not persuasive. We agree with the district court that Parmer failed to demonstrate facts sufficient to avoid summary dismissal of his claims on the prejudice prong of *Strickland*. Parmer failed to establish a reasonable probability that the admission of the claimed evidence would have resulted in a different trial outcome.

## III.

## CONCLUSION

Parmer has failed to demonstrate reversible error.  Accordingly, the district court's order summarily dismissing Parmer's petition for post-conviction relief is affirmed.

Chief Judge GUTIERREZ and Judge LANSING **CONCUR.**